On March 31, 1943, at about 4 p.m., Carl E. Toler, while backing his 1936 Chevrolet Coach automobile out of his garage in the rear of his house, occupied by himself and plaintiffs herein, struck, ran over and immediately killed Wallace Larue Jackson, the seventeen months old infant child of plaintiffs. Plaintiffs, the father and mother of the said infant child, on September 28, 1943, filed this suit against the defendant, State Farm Mutual Automobile Insurance Company, the liability insurer of the said Carl E. Toler, for damages growing out of the death of their infant child, alleging the cause of death of their said infant child to be solely due to the negligence of the said Carl E. Toler.
In answer, the defendant denies the negligence imputed to Toler, and, as special defenses, interposed the following:
1. "* * * that there was and there is no coverage under the said policy since the plaintiffs and Carl E. Toler, the insured, were members of the same household.
2. "(a) * * * upon the occurrence of the said accident on March 31, 1943, a written notice was not given by or on behalf of the insured, Carl E. Toler, to your respondent, or to any of its authorized agents or representatives, as soon as practicable, as provided in said policy. Respondent specially pleads that the first notice of any kind given to your respondent, or to the representative of respondent, was the written statement of the said Carl E. Toler, of date June 21, 1943, some eighty-two (82) days after the occurrence of the accident on March 31, 1943.
"(b) Respondent specially pleads that the giving of the said notice is a condition precedent to liability, and respondent avers that it has taken such action as was possible to protect its rights in the premises, as will be shown on the trial of the case."
Upon the issues thus made, the case was duly tried. The trial judge in a written opinion first discussed the special defenses and overruled the first special defense. However, he held that the second defense was sound both in fact and in law, and sustained it; he did not discuss and did not come to a conclusion as to the question of negligence of Toler, and signed a judgment dismissing plaintiffs' suit at their costs. Plaintiffs have appealed.
On this appeal the only question for determination is the correctness of the trial judge's ruling sustaining the second special defense urged by the defendant.
The facts pertaining to the question are: Mr. and Mrs. Jackson, with their infant son, were living in a house owned by Toler. Mrs. Jackson is the niece of Toler. Toler occupied a bedroom with a private bath. Toler had given them the use of the house, save this room with private bath for his own occupancy. They furnished the public utilities and his meals in lieu of rent. Toler and his niece then knew or should have known who was the liability insurer of his car and the agent thereof in Baton Rouge. Toler failed to give immediate notice of the accident to the company or its Baton Rouge agent, for the reason, as testified by Toler, that he was led to believe that no action would be taken by plaintiffs for the death of their son, which fact is denied by plaintiffs, but the circumstances show otherwise. However, upon ascertaining, in, June 1943, that plaintiffs were claiming damages, he, on June 21, 1943, then visited defendant's local attorneys' and agents' office and notified the said office of the accident and gave a statement regarding the accident. On June 25, 1943, plaintiffs' attorneys then gave notice to defendant and made claim of it for the damages claimed in this suit, which demand was refused, and this suit followed.
The pertinent provisions of the policy of insurance are as follows:
"Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the name and address of the injured and of any available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof. * * *." *Page 767 
The coverage clauses protect the insured against liability for damages resulting from personal injury to others to the amount of $10,000 to each person, with a limitation of $20,000 for each accident.
The law governing the rights of the injured party under a policy of this kind is Act 55 of 1930, amending Act 253 of 1918, which reads as follows:
"Section 1. That * * * Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy * * * and said action may be brought either against the insurer company alone. * * *
"Provided that nothing contained in this act shall be construed to affect the provisions of the policy contract if the same are not in violation of the laws of this State.
"It being the intent of this act that any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; provided the terms and conditions of such policy contract are not in violation of the laws of this State."
[1] It is our interpretation of the Act that it only gives to the party injured the same rights, subject to the terms and limits of the policy, as given to the assured, but it does not impose on the injured party the duty to give notice of the accident which caused him injury. This duty, under the policy, is imposed upon the assured only.
[2-4] We are of the opinion that an automobile liability insurance policy is to be liberally construed so as to afford to the insured and those deriving a benefit therefrom as given by Act 55 of 1930 the indemnity which he and they are warranted in believing themselves to be obtaining thereby, and in any case of ambiguity is to be construed most strongly against the insurer, who selects its terms and prepares it. However, where there is no ambiguity in the policy, there is no room for construction and the only thing left to be done is to apply the policy as written. The policy in question provides that the assured shall give the assurer or its authorized agents a written notice of the accident "as soon as practicable". Does the phrase "as soon as practicable" mean as soon as practicable as the insured was aware of the accident and the resulting injury or as soon as practicable as the insured was aware of a claim against him or his insurer for damages? In answering this question we bear in mind the rule that the contract should be construed according to the sense and meaning of the terms which the parties have used, and if such terms are unambiguous, they are to be taken in their plain, ordinary and popular sense; also that where a policy is susceptible of two constructions, the one more favorable to the insured, in our case to the party injured, will be adopted.
[5-8] A requirement commonly made in liability insurance policies on automobiles is that the insured, upon the occurrence of any accident covered by his policy, shall give the insurer written notice thereof immediately, promptly, or as soon as practical (as in our case), and compliance therewith is a condition precedent to the insurer's liability. It is our opinion that these terms are of the same meaning. They do not mean instantly, but mean within a reasonable time after the insured has learned of the accident, having due regard to all the circumstances, and the resulting injury. The purpose of the notice is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, or be advised whether it is prudent to settle any claim arising therefrom. Such provision has been uniformly recognized as reasonable and valid. Each case must be decided on its own particular facts. In the case at bar the insured, Toler, in fact the plaintiffs also, well knew all of the circumstances of the accident and of its resulting injury on March 31, 1943, the day of the accident and death. The only excuse offered by Toler for the delay is that plaintiff told him twice that they were not going to sue, after having informed them that he was covered by insurance. Were he suing the defendant for reimbursement of any judgment rendered against and paid by him, there isn't any doubt in our mind that he could not recover on account of the violation of the contract of insurance. See Wheeler v. London Guarantee 
Acc. Co., 180 La. 366, 156 So. 420; Dennis Sheen Transfer Co. v. Georgia Gas Co., 163 La. 969, 113 So. 165.
Now can the defendant successfully urge such a plea against the plaintiffs, third parties and not a party to the contract? We think so. *Page 768 
In the case of Edwards v. Royal Indemnity Co., 182 La. 171,161 So. 191, 195, in reviewing a decision of this court, and interpreting the effect of Act 55 of 1930 on insurance policies, the Supreme Court states: "As a result of the provisions of Act No. 55 of 1930, the policy of public liability not only protects the insured from loss caused by his negligence, but is also in favor of the party who sustains damages through the insured's fault. It is, therefore, ouropinion that the Legislature intended to give the insurer theright to plead defenses which it could urge against theinsured, but not defenses which are purely personal between the insured and claimant, and in no way growing out of, or connected with, the accident or policy." (Italics ours.)
The Supreme Court, in the case of Ruiz v. Clancy et al.,182 La. 935, 162 So. 734, 738, reaffirmed its holding in the following language: "The last paragraph of the statute providesthat, in a suit brought by an injured person against theinsurance company alone, the company may urge any defenseswhich the company might urge in a suit brought against thecompany by the insured, to recover a loss which he has beencompelled judicially to pay to the injured pairty." (Italics ours.)
There are not numerous decisions in our State construing the interpretation and effect of the provision contained in the policy under consideration mainly because very few accident policyholders fail to give immediate or reasonably prompt notice of accidents.
In the case of Jones v. Shehee-Ford Wagon, etc., 183 La. 293,163 So. 129, the Supreme Court refused to consider the question whether a breach of a contract of liability insurance by the insured to give the assurer immediate notice of the accident should defeat the right of action of the injured party under the provision of Act 55 of 1930. In that case, the insured gave notice to the insurer as soon as he had knowledge that the accident had caused loss covered by the policy, some twenty-six days after the accident. The Supreme Court held that this was a substantial compliance with the provisions of a notice of the accident as soon as practicable, thus showing that each case must be determined by its own facts.
Prior to the decision of the Supreme Court in the case of Jones v. Shehee, supra, the Second Circuit, Court of Appeal, in the case of Howard v. Rowan, La. App., 154 So. 382, 384, held that the word "immediate" meant within a reasonable time, and that a notice by insured forty-four days after the accident when the insured knew on the day following of the accident, that the injured party had been hurt to the extent of a broken arm, and a demand made upon the insured for damages caused by the accident and which demand was refused by the insured, was not an immediate notice as required by the policy, a condition precedent to liability on the part of the insurer, and discharged the insurer, rejecting plaintiffs' demand as to it. For its holding, the court quotes from the case of Dennis Sheen Transfer Co. v. Georgia Casualty Co., supra, in which case the Supreme Court states: "It cannot be said that notice delayed nearly three months is immediate notice. Oakland Motor Co. v. American Fidelity Co., 190 Mich. 74, 155 N.W. 729." The Court further states: "See, also, notes beginning on page 177 of 76 A.L.R., where decisions of nearly every state in the Union are cited, holding to the same view."
The same Court, that is, the Second Circuit, Court of Appeal, had under consideration the effect of a delay of notice to the insurance company of eleven months in the case of Bullock v. Fidelity Casualty Co. of New York, La. App., 187 So. 93. This delay was excused because of the particular facts in the case. After quoting from the decision of the Supreme Court in the case of Jones v. Shehee-Ford, etc., supra, 14 R.C.L., pp. 1330, 1331, and Couch's Cyclopedia of Insurance Law, Vol. 7, p. 5408, Section 1538, and referring to 76 A.L.R. page 105 and 36 Corpus Juris, p. 1105, states [187 So. 99] "The pronouncement of our Supreme Court in the Jones case, supra, is a composite of the rules laid down by the various text-writers, quoted from and referred to above. With these authorities as a basis, we conclude, as did the trial judge, that Wilbur 'was not required to give his insurer notice, being in good faith, ignorant of the injury and having used reasonable diligence in concluding that no claim would result from the accident.' "
We had under consideration the effect of a delayed notice of eight months in the case of Duncan v. Pedare. In our first decision, 161 So. 221, we held that a delay in the giving of notice of eight months and seven days did not preclude insurer's liability *Page 769 
to a guest where the guest gave assured notice of injury twenty-six days after he was aware of the extent of his injury and the 'assured gave assurer notice two days thereafter. On rehearing, Duncan v. Pedarre, 164 So. 498, we reversed our former decree, by a divided court, and held that the notice was not timely given, principally for the reason that both Duncan and Pedarre knew that the accident had happened, Duncan, exclaiming at the time of the accident, that his back was broken and apparently Duncan was suffering seriously with the injury thus received. The writer of this opinion dissented principally for the reason that Pedarre, the assured, was not fully informed of the fact that the accident had caused a loss covered by the policy and the extent of the injury; that as soon as he was informed of the extent of the injury and a claim for damages made upon him, Pedarre gave notice to the insurer. In his dissent, the writer of this opinion also expressed himself as having a preference for the doctrine announced in the case of Edwards v. Fidelity Casualty Co. of New York, 11 La. App., 176, 123 So. 162, decided by the Orleans Circuit Court of Appeal, which case will be discussed and commented upon in the following paragraph.
The only case in Louisiana which tends to support the plaintiffs in this case is that of Edwards v. Fidelity 
Casualty Co., supra. In that case the Court had under consideration Act 253 of 1918, which reads as follows: "That, * * *, it shall be illegal for any company to issue any policy against liability unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and, in case of such insolvency or bankruptcy, an action may be maintained within the terms and limits of the policy by the injured person or his or her heirs, against the insurer company," (Italics ours), and its effect on a provision in the policy of insurance providing that the assured shall give the insurer immediate written notice of any accident which might occur within the terms and conditions of the said policy, the notice of the accident having been given by the assured to the insurer after a delay of eleven months. The court, interpreting the statute, states [11 La. App. 176, 123 So. 163]: "We think that the words 'terms and limits of the policy' were not intended to include the requirements of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply," citing and quoting with approval the case of Rokes v. Amazon Insurance Co., 51 Md. 512, 34 Am.Rep. 323, thus holding that the claimant was not bound by the provision of the policy requiring notice of the accident to the insurer.
It appears that this decision has met with considerable criticism and seems to be in line with the minority holding in this country. In fact, its holding has the support of only four other state courts, those of Maryland, Kentucky, Washington and South Carolina.
However, the Orleans Court of Appeal reaffirmed its holding "of that case in the case of Bougon v. Volunteers of America, La. App., 151 So. 797. It also held, in the case of Jones v. American Mut. Liability Ins. Co., La. App., 185 So. 509, that a delay of 25 days in the giving of a notice of an accident was a substantial compliance with the provisions of an automobile liability policy requiring notice "as soon as practicable", which delay did not preclude a third party from bringing suit against the company. It is apparent from a reading of the concurring opinion of Judge Janvier in the Jones case, that the majority of the court would not follow its decision in the Edwards case, holding that no notice of the accident need be given to the insurer in so far as a third person is concerned.
In the case of State Farm Mut. Automobile Ins. Co. v. Grimmer et al., D.C., 47 F. Supp. 458, 466, Judge Porterie, United States District Judge for the Western District of Louisiana, held that a delay of eight months in giving notice of accident was not a compliance with provision of automobile liability policy requiring notice "as soon as practicable." In that case Judge Porterie, in a well-reasoned opinion, comments on every case decided by our Courts, including the dissent of the writer of this opinion in the Duncan-Pedarre case, supra.
In their oral argument, original brief, and again in their supplemental brief, plaintiffs rely heavily on the case of Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351, contending that the Supreme Court had expressed itself relative to Act 55 of 1930 and had held that the said Act *Page 770 
expresses the public policy of this State, that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.
Relative to the provision requiring the giving of notice by the insured to the insurer, it stated that it was not within the power of the third party injured to give notice as required by the policy in that the injured party rarely has the knowledge as to who may be the insurer of the party responsible for his injuries and the enforcement of such a provision, without any action on his part, would automatically deprive him of the right of action granted to him. Our answer to the plaintiffs is that the facts in that case are very different from the facts in this case. The Supreme Court was not called upon to interpret the effect of want of notice by the insured, the notice of the accident having been given to the insurer on the day following the accident. The question at issue was the effect of another clause of the policy requiring the insured to request, in writing, within thirty days after an accident, that the driver of his automobile be an additional insured. What is said in the opinion as to the giving of notice of the accident is purely obiter dicta, and need not have been said, and is not binding on us.
Since the giving of notice is required as a condition precedent to recovery, and since the giving of a notice by the insured some eighty-two days after the accident is not one "as soon as practicable" under the circumstances of this case, the judgment appealed from should be affirmed.
For these reasons, the judgment appealed from is affirmed.